## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CHEMICAL AND EQUIPMENT )
SPECIALTIES, INC., )
                 )
           Plaintiff, )
                 )
v. )   Case Number CIV-05-599-C
                 )
EDWARD F. VINSON, et al., )
                 )
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendants' Motion for Partial Summary Judgment. Plaintiff Chemical and Equipment Specialties, Inc. (CESI) filed a response, Defendants filed a reply, and CESI filed a surreply; accordingly, the motion is ripe for disposition. The Court, upon consideration of the litigants' submissions and the applicable law, now **GRANTS** Defendants' motion.

### BACKGROUND

Plainsman Technology (Plainsman), a non-party to this action, employed Defendants Edward F. Vinson (Vinson) and Ricky N. Beard (Beard). Vinson signed an Employment Confidentiality Agreement (ECA) wherein he agreed to, inter alia, assign all rights to any inventions made during his employment to Plainsman and execute all documents reasonably necessary for Plainsman to obtain patent protection. While with Plainsman, Vinson invented a special chemical compound for use in the oil fields and the subsequent patent was assigned

to Plainsman (the 221 Patent).  At this time, no records exist of Beard entering into a similar ECA with Plainsman.

Vinson and Beard left Plainsman's employment in late 1995 and subsequently formed Chemplex, L.C. (Chemplex).  Vinson and Beard invented a product known as the "Reducer" and filed a provisional patent application in October 1996 and received a patent on the Reducer in May 2000 (the 435 Patent).  In late summer or early fall of 1996, Plainsman learned that Chemplex had been approaching Plainsman's clients and offering to sell the Reducer.  In December 1996, Plainsman obtained a sample of the Reducer, conducted an analysis, and concluded that the Reducer fell within the scope of its 221 Patent.  On March 3, 1997, Plainsman's attorney sent a cease-and-desist letter to Chemplex demanding that it stop marketing the Reducer as it infringed on Plainsman's 221 Patent, stated that Plainsman believed the Reducer was based on an invention made by Vinson during his employment with Plainsman and asserted ownership thereof, reiterated Vinson's obligation under his ECA to promptly assign all rights to Plainsman, and stated that a successful lawsuit would entitle Plainsman to an injunction, money damages, costs, and attorney's fees.

CESI initially filed the instant action in state court in April 2005.  Subsequent to Defendants' timely removal of the action to federal court under the diversity statute, CESI filed an amended complaint on January 12, 2006, seeking, inter alia, a declaratory judgment of ownership of the 435 Patent and breach of the ECA.  Effective January 31, 2006, CESI officially merged with Plainsman and another entity and changed its name from CESI to CESI Chemical, Inc.  On June 16, 2006, CESI filed a second amended complaint dropping

its claim for breach of the ECA while adding factual allegations addressing the issue of standing.  Defendants now move the Court for partial summary judgment under Rule 56 on CESI's claim for declaratory judgment of ownership of the 435 Patent, asserting three alternative affirmative defenses.

## APPLICABLE LAW AND THE STANDARD OF REVIEW

In a diversity case, the Court applies the substantive law of Oklahoma, including its choice of law rules.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  The ECA appears to indicate that Oklahoma is the place of both performance and creation. (Amended Compl., Dkt. No. 61.)  In addition, the ECA contains an explicit choice of law provision wherein the litigants agreed to the application of Oklahoma law.  For the foregoing reasons, Oklahoma law governs.  See 15 Okla. Stat. § 162; Rhody v. State Farm Mut. Ins. Co., 771 F.2d 1416, 1420 (10th Cir. 1985); Pate v. MFA Mut. Ins. Co., 1982 OK CIV APP 36, ¶ 11, 649 P.2d 809, 811.

Defendants assert affirmative defenses in their motion, as opposed to attacking the sufficiency of CESI's claims.  As a result, summary judgment is proper only if Defendants, as the movants, show "there is no genuine issue as to any material fact and that [Defendants are] entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), with regard to the affirmative defenses asserted.  Johnson v. Riddle, 443 F.3d 723, 725 n.1 (10th Cir. 2006). CESI initially bears no burden on a motion for summary judgment proffering an affirmative defense.  Id.  Only if Defendants first demonstrate that no genuine issue of material fact

exists as to the affirmative defense must CESI then go beyond the pleadings and present evidence sufficient to establish the existence of a disputed material fact.  Id.

The Court's function, at the summary judgment stage, is not to weigh the evidence but to determine whether there is a genuine issue of material fact in dispute.  Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994).  "An issue is 'genuine' if, [viewing the full record] there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "The mere existence of a scintilla of evidence in support of [CESI]'s position is insufficient to create a dispute of fact that is 'genuine' . . . ."  Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).  "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim," see Adler, 144 F.3d at 670 (citing Anderson, 477 U.S. at 248), or in this instance, the asserted affirmative defenses.  When deciding whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmoving party, CESI, and draws all reasonable inferences in its favor.  See Anderson, 477 U.S. at 255; Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999).

## DISCUSSION

Defendants assert three alternative affirmative defenses in their motion – standing, statute of limitations, and laches.  The Court finds Defendants' statute of limitations arguments persuasive; therefore, the Court will not address Defendants' remaining arguments.

Defendants argue that CESI's declaratory judgment claim accrued on May 3, 1997, and is therefore time-barred by Oklahoma's five-year statute of limitations.  CESI contends that under the terms of the ECA an automatic assignment of any rights Vinson had in the 435 Patent occurred in 1993 without any further action necessary by either Vinson or Plainsman.  CESI further contends that its declaratory judgment claim accrued on January 26, 2005, when Defendants took action inconsistent with joint ownership of the 435 Patent by asserting sole ownership over the 435 Patent.  Therefore, CESI concludes that it timely filed a claim for declaratory judgment.  The Court finds that CESI's declaratory judgment claim is time-barred.

In Oklahoma, a suit premised upon a written contract must be filed within five years after the cause of action accrues.  12 Okla. Stat. § 95(A)(1).  "The limitation periods in [12 Okla. Stat.] § 95 begin[] to run from the time the elements of a cause of action arise . . . that is, the cause of action accrues when a litigant first could have maintained his action to a successful conclusion."  MBA Commercial Const., Inc. v. Roy J. Hannaford Co., Inc., 1991 OK 87, ¶ 13, 818 P.2d 469, 473 (citations omitted); Kinzy v. State ex rel. Oklahoma Firefighters Pension & Ret. Sys., 2001 OK 24, ¶ 11, 20 P.3d 818, 823 ("Generally, the limitation period for a breach-of-contract claim accrues when the party asserting it first acquires the right to sue.") (footnote omitted).  The law requires a prudent person to pursue a claim with reasonable diligence; failure to prosecute a claim or further investigate after receipt of facts which, if inquired into, would lead to an understanding of the issues will not bar the start of the statute of limitations.  Id.  Whether a plaintiff knew of the cause of action,

or with reasonable diligence should have known, is usually an issue of fact for the jury;

however, the accrual date may be determined as a matter of law when no genuine factual

issue regarding the claim's accrual is in material dispute.  Maughan v. SW Servicing, Inc.,

758 F.2d 1381, 1387 (10th Cir. 1985).

Here, even if CESI's assertion that the terms of the ECA automatically assigned

Vinson's rights in the Reducer is correct, CESI's argument that its declaratory judgment

claim accrued on January 26, 2005, is belied by the March 3, 1997, cease-and-desist letter

sent by Plainsman's attorney to Vinson, Beard, and Chemplex:

> Plainsman, after having conducted an investigation, discovered that Vinson and Beard, hereinafter jointly and severally referred to as CHEMPLEX, are approaching present and potential customers of Plainsman to sell to such customers a product identified by CHEMPLEX by the trademark "THE REDUCER."  Plainsman has learned that this sales effort of CHEMPLEX has been underway since at least the late summer or early fall of 1996.

> . . . .

> Customers have expressed to Plainsman their confusion over the patent status of [Plainsman's and Chemplex's] products in that the products look the same, smell the same and perform the same function.  The customers, understandably, do not care to be drawn into some patent dispute.

> Plainsman acquired a sample of THE REDUCER from a customer on or about December 18, 1996. . . .  Analysis of the sample reveals it to be a composition included within the scope of one or more of the claims of the [221] Patent.  It is clear that CHEMPLEX has induced, or is inducing, or is attempting to induce customers to directly infringe the claims of the [221] Patent.  ACCORDINGLY, in the absence of a license from Plainsman, . . . you are now directed to immediately cease and desist from engaging in any marketing activities . . . .

> Given the nature of your product, its intended use, and the absence of a license from Plainsman, you are further advised that Plainsman shall consider any sale

or attempt to sell THE REDUCER to any person to be a direct and deliberate infringement of Plainsman's exclusive rights granted by the [221] Patent.

Plainsman is influenced to conclude . . . that the intent of Vinson and Beard . . . was to intentionally and illegally invade the exclusive marketing domain of Plainsman . . . .  Plainsman believes that a Federal Court will also reach the same conclusion.

Rod Posey, an employee of Plainsman, conducted a conversation with Ricky Dyer, . . . at American Fracmaster . . . [who] told Posey that . . . American Fracmaster . . . had used THE REDUCER in its operations and had no intention of purchasing [Plainsman's product] IRONTROL nor of using the same in its operations.

  . . . .

Assuming the factual accuracy of the statements of Dyer . . . together with the rest of the information detailed in this letter, Plainsman must conclude that:

  (1) Dyer, Vinson, Beard and Chemplex conspired together,
    (a) to make and sell a product covered by the claims of the [221] Patent;
    (b) to induce others to infringe the claims of the [221] Patent;
    (c) to use for their benefit the confidential information of Plainsman;
    (d) to file an application for a patent using confidential information owned by Plainsman . . . .

Furthermore, it is clear that the patent application referred to by Dyer is based on an invention made during the time that VINSON was an employee of Plainsman, and, therfor[e], from the VINSON AGREEMENT mentioned above, that application is the property of Plainsman.  To the extent that VINSON is an inventor or coinventor with respect to the subject matter of this application, he is obligated to promptly assign the entire right[,] title and interest in and to the application and all inventions disclosed and claimed therein to Plainsman Technology, Inc., of Marlow, Oklahoma.

  . . . .

You are advised that a lawsuit based upon the above facts will entitle Plainsman to a judgement against you for a grant of an injunction, money

damages equal in an amount up to three times the damages found to have been suffered by Plainsman which were caused by your intentional infringement plus interest, costs and attorney['s] fees.

(Pl.'s Resp., Ex. 1.)

The letter demonstrates that Plainsman was aware of a multitude of facts pointing to Vinson's and Beard's assertion of sole ownership over the Reducer and the resulting 435 Patent as far back as early 1997:  (1) Plainsman conducted an investigation and found that Vinson, through Chemplex, was approaching both existing and potential clients of Plainsman in an attempt to sell a new product; (2) Plainsman received a sample of the Reducer, not from Vinson, but from an existing client; (3) Plainsman concluded that Vinson's Reducer was deliberately infringing upon Plainsman's 221 Patent; (4) Plainsman discovered Vinson's 1996 provisional application for the Reducer, not from Vinson, but from Ricky Dyer, a third party; and (5) Plainsman claimed that Vinson and Beard used for "their benefit the confidential information of Plainsman," id. at 4 (emphasis added).  Furthermore, in Plainsman's letter, it explicitly claims ownership—not co-ownership—of the patent application, reminds Vinson of his duty under the ECA to assign all rights in the patent application to Plainsman, and offers to grant a license to Chemplex for sale of the Reducer. Lastly, Plainsman impliedly threatened a lawsuit against Vinson, Beard, and Chemplex for damages caused by their intentional infringement.  Under the totality of the circumstances, the statute of limitations began to run no later than March 3, 1997, as Plainsman had sufficient facts to put a reasonable man upon inquiry as to ownership rights in the Reducer. That Plainsman failed to give reasonable diligence to the discovery of additional facts or file

a declaratory judgment action in 1997 is no bar to the start of the statute of limitations. Daugherty v. Farmers Co-op. Ass'n, 1984 OK 72, ¶¶ 12, 13, 689 P.2d 947, 951.   Any potential declaratory judgment claim premised upon the terms of the ECA became stale March 4, 2002, a full three years prior to the instant action; therefore, summary judgment is appropriate on CESI's declaratory judgment claim.

CONCLUSION

For the foregoing reasons, the Court finds that there is no genuine issue of material fact in dispute that CESI's declaratory judgment claim accrued on or before March 3, 1997; therefore, the claim is time-barred as the statute of limitations expired approximately three years prior to the filing of the instant action.   Defendants' Motion for Partial Summary Judgment [Dkt. No. 73] is **GRANTED**.   Judgment shall enter at the conclusion of these proceedings.

IT IS SO ORDERED this 10th day of July, 2006.

ROBIN J. CAUTHRON
United States District Judge